**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

v.

**Leonard H. FLETCHER, Appellee.**

**No. 36.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Dec. 13, 1967.

Rehearing Denied Jan. 17, 1968.

Robert E. Delany, Max H. Jennings, Clawson, Jennings & Clawson, Houston, for appellant.

James B. Sales, Wayne Fisher, Fisher, Roch, Sales & Blackstock, Houston, for appellee.

SAM D. JOHNSON, Justice.

This action was brought by plaintiff, Leonard H. Fletcher, against the United States Fire Insurance Company as the workmen's compensation carrier for the Gordon Construction Company. In the alternative, plaintiff brought this action against his employer, D. B. Gordon Construction Company, alleging specific acts of negligence. On the trial of the case to a jury, a judgment was entered based on the findings of the jury that the plaintiff, Fletcher, was totally and permanently disabled and should recover against the United States Fire Insurance Company under the Workmen's Compensation Act, and that there was no negligence on the part of the plaintiff's employer, Gordon Construction Company.

This appeal, by the insurance company only, has as its basis the ruling of the trial court that, as a matter of law, an attempted cancellation of the workmen's compensation insurance policy by the appellant insurance company a few days before appellee's accidental injury, was ineffectual. If the policy of workmen's compensation insurance had been effectively canceled before the date of the accidental injury, there can be no recovery from this appellant insurance company.

Plaintiff's employer, D. B. Gordon, sought and obtained workmen's compensation insurance coverage from the United States Fire Insurance Company by virtue of a policy covering the period from February 1, 1963 to February 1, 1964. The policy reflected D. B. Gordon's address as 4402 *Mt. Hood,* Houston, Harris County, Texas. His correct address, however, was 4402 *Mt. Wood.*

Subsequently, the insurance company determined that certain requested payroll reports from Mr. Gordon were overdue and for this reason a decision was made to cancel the policy. The cancellation provision of the policy provided, "This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice."

The insurance company's first notice of cancellation was prepared and mailed to Mr. Gordon on October 25, 1963. It was improperly addressed to 4402 *Mt. Road,* and as a result, was returned to the sender. On its return, a second notice of cancellation was prepared and mailed to Mr. Gordon on October 30, 1963. It was addressed to 4402 *Mt. Hood,* the address, though incorrect, that was shown on the policy. This second notice recited that the effective date of cancellation was to be November 8, 1963. This notice was also returned to the insurance company marked, "No

such street number within delivery limits of Houston, Texas. Do not reuse this envelope. Clerk No. 2." It is conceded that the employer, D. B. Gordon, never actually received any notice of cancellation.

The second notice is the only notice under which the insurance company claims cancellation of the policy. As it was prepared and mailed on October 30 and stated that the cancellation was to be effective on November 8, it provided for only *nine days* notice from the certificate of mailing, rather than the *ten days* provided for in the policy.

Subsequently, on November 21, 1963, the employee-plaintiff, Leonard H. Fletcher, received the accidental injury here complained of while working for his employer, D. B. Gordon. The employee, Fletcher, of course, had no knowledge of any of the foregoing facts relating to his employer's insurance coverage, the attempted cancellation, or any matters of this nature.

A secondary relationship also existed between the employer, D. B. Gordon, and the United States Fire Insurance Company. At or about the same time the workmen's compensation insurance policy was issued, Mr. Gordon also obtained a policy of automobile liability insurance from the same company, appellant here, the United States Fire Insurance Company. This policy also *incorrectly* reflected Mr. Gordon's address as 4402 *Mt. Hood.* On November 4, 1963, about the same time of the attempted cancellation of the workmen's compensation insurance policy, notification of the cancellation of the liability policy was mailed to Gordon at his correct address, 4402 *Mt. Wood.*

Appellant insurance company contends that the cancellation clause contained in the policy of workmen's compensation insurance sets forth the sole requirements for cancellation, therefore the mailing of the notice of cancellation to the address shown in the policy is all that is required. Support for this contention is claimed because the policy containing the incorrect

mailing address had been in the possession of D. B. Gordon substantially all of the period of time since its issuance and that it was his duty to examine the insurance policy and, if there was an error, to make it known to the insurance company. The insurance company further contends that, though the cancellation provided for only nine days' notice, or within less time than that provided in the policy, it was nevertheless sufficient to cancel the policy at the end of the time limit set out in the policy. Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co., Tex.Civ.App., 166 S.W.2d 746, (no writ history); California-Western States Life Ins. Co. v. Williams, Tex.Civ.App., 120 S.W.2d 844 (writ dismd.); 32 Tex.Jur.2d 177, 178, Sec. 92; 96 A.L.R.2d, pp. 295–298. If this contention is accepted, the cancellation here would have become effective approximately eleven days prior to the date of plaintiff's accidental injury, which was on November 21, 1963.

◼ We are in accord with the insurance company's contention that the policy of insurance contains and describes the method of cancellation and that it was here followed. The second notice of cancellation was mailed to the name and address of the insured precisely as they were set forth in the policy. Where notice of cancellation has been so mailed, cancellation is effective even though the policy holder never receives notice of such cancellation. Insurance Co. of Texas v. Parmelee, Tex. Civ.App., 274 S.W.2d 944 (no writ history); United States Insurance Co. v. Brown, Tex.Civ.App., 285 S.W.2d 843 (no writ history); California-Western States Life Ins. Co. v. Williams, Tex.Civ.App., 120 S.W.2d 844 (writ dismd.); Texas Cas. Ins. Co. v. McDonald, Tex.Civ.App., 269 S.W.2d 456 (no writ history); Willis v. Allstate Ins. Co., Tex.Civ.App., 392 S.W.2d 799 (writ ref., n.r.e.); Duff v. Secured Fire & Marine Ins. Co., Tex.Civ.App., 227 S.W.2d 257 (no writ history). It is clear from the foregoing authorities that "mailing" is not synonymous with "receipt" or "delivery." We feel that no reliance can be made on the fact that the company might have determined a correct address of the insured even in its own records or communications if they are not a part of or attributable to the particular policy in question. The insurance company is entitled to rely on the specific provisions of the cancellation section of the policy.

Applying the same reasoning, we believe that the facts in this case require the conclusion that the attempted cancellation was ineffectual, because the minimum ten-day policy required notice was not contained in the attempted cancellation communication and that for this reason the notice of cancellation did not comply with the policy requirements.

We are aware of the rule of general application that a notice of cancellation effective immediately, or within less time than that provided in the policy, is nevertheless sufficient to cancel a policy of insurance at the end of the time limit set out in the policy. Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co., supra; California-Western States Life Ins. Co. v. Williams, supra; 32 Tex.Jur.2d, pp. 177–178, Sec. 92. We are not aware, however, of the application of this rule by Texas courts in cases involving policies of workmen's compensation insurance. Indeed, "Where workmen's compensation coverage is involved * * * some courts have applied a different rule."

In Hauter v. Coeur D'Alene Antimony Mining Co., 39 Idaho 621, 228 P. 259, the plaintiff's husband was fatally injured in an accident which occurred on November 17, 1918, while working for the mining company. Prior to that time, on August 8, 1918, the insurer sent notice of cancellation to plaintiff's employer declaring that the policy of workmen's compensation insurance that had been previously issued was canceled effective August 30, 1918, for non-payment of premiums. There, the policy in question prescribed that cancellation could be effected by the insurer furnishing

the insured not less than thirty days written notice of cancellation. The insurer urged that the cancellation was effective thirty days after service of the notice, although the notice was not sufficient to cancel on the date specified, which amounted to only twelve days' notice. Concluding that the notice was insufficient and that the policy was in force and in effect three months after the attempted cancellation, the Idaho Supreme Court stated: "We think that the attempt to cancel the policy, not having been made in accordance with the conditions and requirements specified in the instrument itself, was ineffectual, and such policy was in force at the time of the happening of the injury complained of. * * * Respondent concedes that the notice was not sufficient to cancel the policy on the date fixed in the notice, but contends that such cancellation would become effective after the expiration of 30 days from the service of the notice, and cites authorities involving fire insurance policies containing somewhat similar provisions, wherein it is held that although the time given in the notice was not that specified in the policy, still the notice would be held sufficient after the expiration of the time fixed by that instrument. No case is called to our attention involving the cancellation of a policy of this kind given under the provisions of the Workmen's Compensation Act. In view of the fact that such contracts are issued not only for the benefit of the assured, but for the benefit of its employees, who necessarily have no control over the contract, we are of the opinion that such contract should be canceled only by a strict compliance with the conditions of the contract itself." (Citing cases.)

On motion for rehearing, the court added: "Respondents insist that a more strict compliance with the terms of the agreement relating to cancellation should not be exacted than in other classes of insurance; that even though the policy may be taken out primarily for the benefit of the insured's employees and they may have a vital interest in it; they cannot prevent its cancellation where the insurer elects to cancel the same. But we adhere to the view that the employees of the insured who have suffered injuries, or their dependents when death has ensued, may recover against the insurer unless the policy has been canceled in accordance with the conditions in the policy. The insurer fixes those terms, and it is a well-settled rule of construction that the words of a contract will be construed most strongly against the party who uses them." See also Kulikowich v. P & J Coal Co. (1946) 58 Pa.Dist. & Co. 433.

■ In addition to the well reasoned authority cited here, we believe there are other sound reasons for a requirement of strict compliance. The policy itself provides that it "may be canceled by the company by mailing to the insured * * * written notice stating when, not less than ten days thereafter such cancellation shall be effective." This provision clearly provides that the notice shall state *when* it is to be effective, but with the express limitation that such date shall be *not less* than ten days thereafter. By the terms of the policy itself, the insurance company is free to select any date at or beyond the tenth day. These same policy terms, however, expressly exclude the selection of a date within the prohibited period. Strict compliance with the mailing provision of the cancellation's section of the policy inures to the company's benefit. If additional benefits are to be claimed by the insurance company, they must come as a result of similar strict compliance with other policy provisions. We think this is particularly true where, as here, it was known by the insurance company that the cancellation notice was not received by the insured.

Such a rule of strict compliance with the cancellation provision is altogether appropriate for policies of workmen's compensation insurance. It places no added burden on the insurance company, it need only comply—strictly—with its own policy. Added significance must attach to the

rights of unknowing third parties, the employees that are covered, that are at stake with policies of workmen's compensation insurance. Workmen's compensation statutes are designed for the protection of an important segment of our society and formulated to obtain strict compliance on the part of employers. That same strict compliance should extend to the various policy provisions and should include both the employer and the insurance company.

We have carefully examined the remaining points of error in support of appellant's contention that the appellee sustained no total and permanent incapacity as a result of the accidental injury. These points of error are overruled.

The judgment of the trial court is affirmed.